UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RAIL SWITCHING SERVICES, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:13CV157 SNLJ |
| PEMISCOT COUNTY PORT AUTHORITY, | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on the defendant's motion to dismiss. The motion has been fully briefed and is ready for disposition. For the following reasons, the Court will grant the motion.

## I.    Background

There is an ongoing controversy between Pemiscot County Port Authority (Port Authority) and Rail Switching Services, Inc. (RSSI) as to the validity of a Rail Line Operating Agreement executed February 29, 2012 (the "2012 Agreement") by J. Michael Carr, president of RSSI, and by David P. Madison, executive director of Port Authority. Port Authority, formed by Pemiscot County under Missouri Revised Statute § 68.010, et seq., owns a railroad line that extends approximately five miles from the BNSF Railway Company ("BNSF") rail line at Hayti, Missouri, onto the Port Authority's property. After the expiration of an October 2008 car storage agreement executed by representatives of Pioneer Resources, Inc. (now known as RSSI) and Port Authority, Michael Carr and David Madison executed the 2012 Agreement.

In May 2012, Port Authority executed a lease of land to Marquis Missouri Terminal, Inc. ("MMT"), to enable it to build a rail service facility. In August 2012, the Port Authority granted track usage rights to MMT. In October 2012, BNSF began transporting loaded cars to MMT's leased property. RSSI contends that the 2012 Agreement signed by Carr and Madison prohibits MMT from using Port Authority's railroad line and permits only RSSI to deliver oil cars from BNSF to MMT. Port Authority contends that the 2012 Agreement signed by Carr and Madison is void *ab initio*, because it was not authorized in writing by the Port Authority's Board of Commissioners in violation of section 432.070 RSMo.[1]

On April 19, 2013, Port Authority filed a complaint for declaratory judgment in this Court ("prior federal action"). On May 15, 2013, RSSI filed, with its answer, a counterclaim against Port Authority for breach of contract. RSSI subsequently filed a motion for leave to amend its answer and its counterclaim against Port Authority to add a claim for tortious interference. On August 26, 2013, the Court dismissed the prior federal action because Port Authority had failed to establish that the amount in controversy exceeded $75,000.00, exclusive of interest and costs. Port Authority then filed its petition for declaratory judgment in the Circuit Court of Pemiscot County ("Pemiscot

---

[1] Section 432.070 RSMo states, "No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

County lawsuit") on August 27, 2013. RSSI was served with the petition and summons in the Pemiscot County lawsuit on August 28, 2013.

On August 30, 2013, RSSI filed, in federal court, a motion to clarify or reconsider, asserting that its counterclaims in the prior federal action presented an independent basis for invoking the Court's subject matter jurisdiction. RSSI asked that the Court clarify or amend its Dismissal Order and return the case to its docket for further proceedings regarding RSSI's counterclaim. The Court denied RSSI's motion on October 9, 2013. The Court found that whether to retain jurisdiction over RSSI's counterclaim was a matter for the Court's discretion guided by considerations of judicial economy, convenience, fairness, and comity. *Pemiscot County Port Authority v. Rail Switching Services, Inc.*, case no. 1:13-CV-00060-CEJ, ECF # 31. The Court found that the factor of judicial economy weighed against retaining jurisdiction, that the factors of convenience and fairness were neutral, and that the final factor, comity, weighed against retaining jurisdiction. *Id.* The Court noted that the outcome of the parties' dispute depends upon whether the Port Authority is a "municipal corporation" as defined by state law and stated that "it is more appropriate to have this issue, which concerns the identity of governing entities created and defined by state law, decided by the state courts." *Id.*

On October 29, 2013, RSSI filed the present action for breach of contract and tortious interference arising out of the same occurrence as the prior federal action. Port Authority filed this motion to dismiss because of the pending state court action.

While RSSI's motion to clarify or reconsider was pending in the prior federal court action, it filed a motion to dismiss on September 27, 2013, in the Pemiscot County

lawsuit. RSSI claimed that Port Authority could not maintain a declaratory judgment action under Missouri law because it had an adequate remedy at law by asserting an affirmative defense to RSSI's counterclaim in the prior federal action. RSSI alleged its counterclaim was still pending in the prior federal action. RSSI's motion was denied by the state trial court. RSSI petitioned the Missouri Court of Appeals, Southern District, for a Writ of Prohibition, which was subsequently denied. Thereafter, RSSI filed a Writ of Prohibition in the Supreme Court of Missouri. Meanwhile, RSSI submitted a "Motion for Leave to File its Answer and Counterclaims Out of Time," which the trial court granted. On March 21, 2014, RSSI filed its answer and counterclaims for breach of contract and tortious interference in the Pemiscot County lawsuit. The Supreme Court of Missouri denied the Writ of Prohibition on April 29, 2014.

## II. Legal Standard – Motion to Dismiss

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor

of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). "Further, documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents for all purposes." *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010); *Great Plains Trust Co. v. Union Pacific R. Co.*, 492 F.3d 986, 990 (8th Cir. 2007).

## III. Discussion

Port Authority seeks dismissal arguing that RSSI's claims alleged in this action are compulsory counterclaims in the Pemiscot County lawsuit and may not be maintained separately in this Court. Additionally, Port Authority argues that RSSI's complaint should be dismissed under the *Colorado River* abstention doctrine in order to avoid duplicative litigation in federal court of a matter more properly decided in the parallel litigation in the Circuit Court of Pemiscot County. In response, RSSI contends that its breach of contract and tortious interference claims are not compulsory counterclaims to a peremptorily filed declaratory judgment claim and argues that this Court should not abdicate its unwavering obligation to exercise diversity jurisdiction under the *Colorado River* abstention doctrine.

### A. Compulsory counterclaims

To determine whether the complaint should be dismissed because of preclusion under state counterclaim requirements, the Court must look to Missouri law. *Bankcard Systems, Inc. v. Miller/Overfelt, Inc.*, 219 F.3d 770, 773 (8th Cir. 2000). Under Missouri law, any claim that is compulsory must be asserted in the same litigation. *Id.* Missouri Rule of Civil Procedure 55.32(a) provides:

5

> A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Thus, a claim is compulsory when it meets two requirements. First, the claim must "at the time of serving the pleading, arise[] from the same transaction or occurrence as the original claim," meaning that the counterclaim is "logically related to the claim in a broad sense." *Bankcard Systems,* 219 F.3d at 773. "[T]he term 'transaction' is to be applied in its broadest sense, to include all facts and circumstances constituting the foundation of the claim." *Id.* Second, the claim "must be brought by one party against an opposing party, not involving any third parties over whom the court cannot acquire jurisdiction." *Id.*

The purpose of the compulsory counterclaim rule is to bring "all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims." *State ex rel. J.E. Dunn, Jr. & Assocs, Inc. v. Schoenlaub*, 668 S.W.2d 72, 75 (Mo. banc 1984) (quoting *Cantrell v. City of Caruthersville,* 221 S.W.2d 471 (1949)). Dismissal of a federal action is proper where the claim should have been asserted in a pending state action because the claim would "requir[e] a reexamination of the same events of the state court action in a later litigation." *Bankcard Systems*, 219 F.3d at 774.

RSSI's claim for breach of contract is a compulsory counterclaim under Missouri law. Both Port Authority's declaratory judgment action and RSSI's claims in the instant action arise out of the 2012 Agreement and require adjudication as to the validity and

6

enforceability of that contract. RSSI's claim arises from the same contract that Port Authority seeks to be declared void *ab initio*. Declaring whether there was a valid contract will be critical in resolving RSSI's breach of contract claim. The determination of either the state court action or the instant action will affect the outcome, factually and legally, of the other.

Additionally, RSSI's claim for tortious interference is a compulsory counterclaim under Missouri law. "The scope of compulsory counterclaims, however, is not limited 'to only those claims which are of the same nature or seek the same relief.'" *Bankcard Systems*, 219 F.3d at 773 (quoting *Schoenlaub*, 668 S.W.2d at 75). RSSI's claim arises out of the 2012 Agreement and the surrounding circumstances and is a logically related claim.

There is no question that RSSI's claims are asserted by a party against an opposing party – RSSI and Port Authority are both parties in the state and federal actions. Further, no third party is needed in order for RSSI to assert its claims as counterclaims in the Pemiscot County lawsuit. Therefore, all of the criteria under Rule 55.32(a) are met, making RSSI's claims compulsory counterclaims. Although RSSI argues that its claims are not compulsory counterclaims, it admits that both actions stem from the same contractual relationship. To hear RSSI's claims for breach of contract and tortious interference separately "would defeat the function of Rule 55.32(a) by requiring a reexamination of the same events of the state court action in a later litigation." *Id.* at 773-774.

Further, RSSI argues that their claims cannot be compulsory counterclaims to the state action because declaratory judgment may not be invoked where the plaintiff has another adequate legal remedy. RSSI cites several cases which state that declaratory judgment is inappropriate where the plaintiff has another adequate legal remedy, that is, that the plaintiff could assert its claim as a defense in an action brought by the defendant. See *Huff v. Dewey & Lebouef, LLP*, 340 S.W.3d 623, 627 (Mo. App. W.D. 2011); *Preferred Physicians Mut. Mgmt. Grp., Inc. v. Preferred Physicians Mut. Risk Retention Grp.*, 916 S.W.2d 821, 824 (Mo. App. W.D. 1995) (citing *State ex rel. U.S. Fire Ins. Co. v. Terte*, 176 S.W.2d 25, 30 (Mo. banc 1943)); *Lane v. Lensmeyer*, 158 S.W.3d 218, 223 (Mo. banc 2005). However, RSSI's reliance on these cases is misplaced. The difference between the present lawsuit and these cases is that in the cited cases, the declaratory judgment action was filed after an action at law. In this case, the declaratory judgment was filed in Pemiscot County before RSSI filed the present suit in federal court.

RSSI erroneously claims that the prior federal action was still pending at the time Port Authority filed for declaratory judgment in the Pemiscot County lawsuit. Clearly, however, at the time Port Authority filed its state action, the prior federal action had been dismissed by the Court. Therefore, Port Authority could not have asserted its issue as a defense in the prior federal action or in the instant action as it did not yet exist. Port Authority did not have an adequate remedy at law prior to filing its suit for declaratory judgment.

Finally, during the time that the Writ of Prohibition was pending before the Missouri Supreme Court, RSSI filed its answer and asserted its counterclaims in the

Pemiscot County lawsuit. Since the purpose of Rule 55.32 is to bring together all logically related claims into one lawsuit, *State ex rel. J.E. Dunn, Jr.*, 668 S.W.2d at 75 (quoting *Cantrell,* 221 S.W.2d at 471), litigation across multiple jurisdictions would defeat the rule's purpose.

**B.** ***Colorado River* abstention doctrine**

Port Authority contends that the *Colorado River* abstention doctrine provides an additional basis for dismissal. RSSI argues, however, that under the *Colorado River* abstention doctrine, this Court should retain jurisdiction of its claims. In *Colorado River Water Conversation District v. United States,* 424 U.S. 800, 813 (1976), the Supreme Court stressed that federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them," even when there is a pending state court action on the same subject matter. Nonetheless, a court may abstain under *Colorado River* from exercising jurisdiction if (1) "parallel state and federal actions exist" and (2) "exceptional circumstances warrant abstention." *Cottrell v. Duke,* 737 F.3d 1238, 1245 (8th Cir.2013) (quoting *Fru–Con Constr. Corp. v. Controlled Air, Inc.,* 574 F.3d 527, 534 (8th Cir.2009)).

In order for proceedings to be parallel, "a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in federal court." *Id.* A court compares the "sources of law, required evidentiary showings, measures of damages, and treatment on appeal" when determining whether two proceedings are parallel. *Id.*

In this case, the proceedings are parallel. The state and federal proceedings involve the same parties, the same circumstances, and the same disputes. RSSI's claims in this action are compulsory counterclaims in the state action and have, in fact, been pled as counterclaims in the state action.

Because the Court determines that these proceedings are parallel, it must address whether exceptional circumstances warrant abstention. *Fru–Con Constr.,* 574 F.3d at 534. Several factors are to be evaluated in determining the existence of "exceptional circumstances" including:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority- not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.,* 48 F.3d 294, 297 (8th Cir. 1995).

This Court finds that all of the factors for determining whether exceptional circumstances exist are either neutral or favor the state action. Specifically, the Court believes that retaining jurisdiction of this action would lead to piecemeal litigation at its best, or inconsistent verdicts at its worst. If the state and federal proceedings were to continue as they now stand, both courts will have to consider the same evidence and laws. The courts could reach different results. This risk of piecemeal litigation weighs in

favor of abstention. Accordingly, the Court finds that exceptional circumstances warrant abstention.

## IV. Conclusion

In sum, the Court finds that RSSI's claims are compulsory counterclaims under Missouri law and more properly suited for resolution in the Pemiscot County lawsuit. Allowing RSSI's claims to proceed in this Court would defeat the purpose of Rule 55.32(a) by not bringing together all logically related claims for resolution. Abstention of jurisdiction in this Court is warranted under the circumstances.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss (ECF #6) is **GRANTED** and plaintiff's complaint is **DISMISSED**.

Dated this 11th day of July, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE